**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Matthew T. Minarik,<br><br>                              *Debtor*. | Case No. 25-10193-pmm<br>Chapter 7 |

**First Amended Motion for Sanctions for Violation of the Automatic Stay by PPL Electric Utilities Corporation**

Debtor Matthew T. Minarik, through his attorney, moves this Court to impose sanctions against PPL Electric Utilities Corporation ("the Creditor") for violating the automatic stay, and states as follows:

**I.   Background**

1. The Debtor filed this case voluntarily under chapter 7 on January 16, 2025. At that time, he owed money to the Creditor for electricity service to his residence at 558 Friendship Drive in Caernarvon Township, Lancaster County, Pennsylvania. The residence is property of the Debtor's bankruptcy estate. He listed the Creditor and the outstanding debt on the creditor matrix and Schedule E/F.

2. The Creditor received electronic notice of the bankruptcy from the Bankruptcy Noticing Center on January 18, 2025. Exhibit A. Upon information and belief, the Creditor failed to configure its systems to properly route BNC notices.

3. Between January 16, 2025, and March 24, 2025, the Creditor called the Debtor eleven times, each time playing an automated message demanding payment. Exhibit B.

4. On February 27, 2025, the Creditor mailed a notice threatening to disconnect service to the Debtor's residence unless he paid $9,095.18 by April 3, 2025. Exhibits B and C.

5. The Creditor's repeated collection efforts caused the Debtor significant emotional distress, especially due to the potential impact of a service disconnection on his daughter, who has chronic lung disease. Exhibit B.

6. On March 25, 2025, the Debtor filed this Motion and served it on the Creditor at the mailing address and fax number listed on the termination notice. Exhibits C and D.

7. Between March 24, 2025, and April 1, 2025, the Creditor called the Debtor three times, each time playing an automated message demanding payment.

8. On April 2, 2025, the Debtor tried to reach a live representative at the Creditor's customer service center by phone but could not do so due to long hold times.

9. On April 3, 2025, the Creditor emailed and texted the Debtor, demanding payment and warning that service would be terminated unless he paid by April 16, 2025. Exhibit E.

10. Later that day, the Debtor's attorney emailed the Creditor's chief counsel to demand immediate corrective action. Since the chief counsel's email address was not readily available on the Creditor's website, the Debtor's attorney located it through filings with the Pennsylvania Utility Commission.

11. Shortly after the Debtor's attorney contacted the chief counsel, the Creditor finally assured the Debtor that his service would not be terminated.

## II.  Grounds for Relief

The Creditor's collection efforts against the Debtor were egregious and wanton violations of the automatic stay. These deliberate and repeated actions were intentional attempts to coerce payment through emotional pressure. Consequently, this misconduct caused the Debtor emotional distress and worsened his pre-existing conditions. Significant sanctions are necessary to compensate the Debtor for his injuries and deter the Creditor from engaging in similar misconduct again.

### A.  Violation of Automatic Stay

12. When this case was filed, the automatic stay immediately took effect, which prohibits all creditors from collection activity against a debtor or property of the bankruptcy estate. 11 U.S.C. § 362(a).

13. A creditor violates the stay by attempting to collect pre-petition debt from a debtor or taking collection action against property of the estate. 11 U.S.C. § 362(a)(6). Willful violations make creditors liable for "actual damages, including costs and attorney['s] fees, and, in appropriate circumstances, . . . punitive damages." 11 U.S.C. § 362(k)(1).

14. To recover damages, a debtor must show that "the creditor violated the automatic stay, the violation of the stay was willful, and the willful violation caused some injury." *In re Scungio Borst & Assocs.*, 652 B.R. 644, 652 (Bankr. E.D. Pa. 2023) (Chan, B.J.) (cleaned up). A stay violation is willful "when the creditor [takes prohibited action] with knowledge of the bankruptcy." *Id*. The prohibited act must be intentional, but it need not be done with the intent of violating the law. *Id*.

15. Here, the Creditor had actual notice of the bankruptcy from the BNC. Despite that notice, it continued to coerce payment by threatening to terminate service to estate property and demanding payment from the Debtor. This willful misconduct was the actual and proximate cause of the Debtor's emotional distress.

**B.    Actual Damages**

16. The Creditor's collection activity was designed to coerce payment through emotional strain. Indeed, it caused the Debtor significant emotional distress, including anxiety, sleeplessness, embarrassment, discomfort, and humiliation. He was especially distressed by the potential impact of service disruption on his chronically ill daughter. The repetitive nature of these efforts intensified his stress.

17. The Debtor is a veteran who retired as a Sergeant First Class after twenty years of honorable service in the United States Army, including tours in Iraq, Hungary, and Korea.

18. As a result of his service to our country, the Debtor has been diagnosed with persistent depressive disorder with anxious distress. This condition causes him to experience chronic symptoms of depression, including low energy, poor concentration, feelings of hopelessness, anxiety, heightened restlessness, persistent worry, and fear of losing control, all of which interfere with his daily functioning and quality of life. *See* Persistent Depressive Disorder (Dysthymia), PsychDB, https://perma.cc/4YBY-YMT3 (last visited Apr. 7, 2025).

19. The Court must consider that the emotional distress caused by the Creditor was exacerbated by the Debtor's pre-existing diagnosis of persistent

4

depressive disorder. *See* Restatement (Third) of Torts: Liability for Physical Harm § 31 (Proposed Final Draft No. 1, 2005). The Court must also consider that the emotional distress caused by the Creditor was exacerbated by the Debtor's pre-existing emotional state resulting from being in debt. *Id*.

20. Being in debt can severely impact a person's mental and physical health. *See* Melissa B. Jacoby, *Does Indebtedness Influence Health? A Preliminary Inquiry*, 30 J.L. Med. & Ethics 560, 560-61 (2002); Sarah Brown, Karl Taylor, & Stephen Wheatley Price, *Debt and Distress: Evaluating the Psychological Cost of Credit*, 26 J. Econ. Psychol. 642 (2005). The stress caused by persistent collection calls can be especially damaging. Jacoby, *supra*, at 566. Debtors who experience collection activity are "much more likely to have poor health than debtors who [are] not the subject of aggressive debt collection." *Id*. at 561.

21. Many people in debt are emotionally devastated after months or years of unsuccessfully trying alternatives to bankruptcy. Scott F. Waterman, Remarks at Consumer Federation of America Financial Services Conference, at 1:23 (Nov. 30, 2006), https://www.c-span.org/program/public-affairs-event/consumer-debt/167217. Many debtors feel emotions that are more intense than they will admit to. *See* Michael D. Sousa, *Bankruptcy Stigma: A Socio-Legal Study*, 87 Am. Bankr. L.J. 475 (2013).

22. Congress intends for the automatic stay to "give[] the debtor a breathing spell from [their] creditors" by "stop[ping] all collection efforts, all harassment" and "permitting the debtor . . . simply to be relieved of the financial pressures that drove

5

[them] into bankruptcy." H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6296-97, quoted in *Schwartz v. United States*, 954 F.2d 569, 571 (9th Cir. 1992).

23. By the time people file for bankruptcy, they are usually sad, depressed, worried, and sleepless. Waterman, *supra*, at 1:23. Bankruptcy's fresh start is designed to alleviate that stress and foster "renewed optimism and self-confidence." Sousa, *supra*, at 468. When a creditor violates the automatic stay, it undermines that renewal by depriving the debtor of the bankruptcy's emotional benefits and exposing them to the same distress they experienced before filing.

24. The Debtor is entitled to damages for the emotional distress caused by the Creditor's willful violation of the automatic stay, and its exacerbation of his pre-existing conditions.

### C. Punitive Damages

25. Punitive damages are appropriate when a creditor's misconduct is egregious. *In re Wagner*, 74 B.R. 898, 903-04 (Bankr. E.D. Pa. 1987) (Fox, B.J.) (citing *Cochetti v. Desmond*, 572 F.2d 102 (3d Cir. 1978)). Harassment and repetitive misconduct warrant heightened punitive damages. *In re Johnson*, 601 B.R. 365, 384 (Bankr. E.D. Pa. 2019) (Chan, B.J.).

26. The Creditor is a sophisticated public utility with over one million customers. It routinely encounters bankruptcy filings and should understand the importance of complying with the automatic stay.

27. The Creditor owed the Debtor a duty of care to properly configure its systems to prevent collection activity against people in bankruptcy. Its egregious and wanton neglect caused the Debtor to be subjected to a pattern of pressure tactics designed to compel payment from him despite the protections of the automatic stay.

28. The Creditor continued its collection activity even after it was served with this Motion. These continued violations highlight the Creditor's egregious and wanton disregard for the protections afforded to the Debtor under the Bankruptcy Code.

29. For the year ending December 31, 2024, the Creditor reported gross revenue of $8.46 billion and net income of $888 million. Exhibit F. That explains why this Motion's original demand of $40,000 in damages did not stop the Creditor from continuing to violate the stay. To the Creditor, that amount is chump change.

30. To deter future violations of the automatic stay, the Court must impose meaningful and substantial punitive damages commensurate with the Creditor's ability to pay.

## III. Conclusion

The Creditor's deliberate and repeated violations of the automatic stay warrant significant sanctions. Its coercive conduct, designed to extract payment through emotional pressure, inflicted severe distress on the Debtor and worsened his pre-existing conditions. Meaningful sanctions are necessary to compensate the Debtor for his injuries and to deter the Creditor from engaging in similar misconduct.

For those reasons, the Court must grant relief in the form of order attached, and further in the Debtor's favor if necessary and proper under the law.

Date: April 7, 2025                           **SADEK LAW OFFICES, LLC**

                                              By: /s/ Michael I. Assad
                                                  Michael I. Assad
                                                  1500 JFK Boulevard, Suite 220
                                                  Philadelphia, PA 19102
                                                  215-545-0008
                                                  michael@sadeklaw.com

                                              *Attorney for Debtor*