**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Matthew T. Minarik,<br><br>                                        *Debtor*. | Case No. 25-10193-pmm<br>Chapter 7 |

**Debtor's Memorandum of Law in Support of the Court's Authority
to Award Punitive Damages Under 11 U.S.C. § 362(k)**

Introduction ...................................................................................................................................1

Question Presented ......................................................................................................................2

Brief Answer .................................................................................................................................2

Argument ......................................................................................................................................3

    I.   Section 362(k) claims do not trigger a Seventh Amendment jury right. ............................3

        A.  Section 362(k) claims are not analogous to any actions at common law. ......................4

        B.  Section 362(k) remedies are not legal in nature. ............................................................6

        C.  Even if Section 362(k) claims and remedies are legal in nature,
            the public rights exception applies. ................................................................................7

    II.  Even if Section 362(k) claims do trigger a Seventh Amendment jury right,
        no jury right exists here because it was waived. ...............................................................10

Conclusion .................................................................................................................................. 11

**Introduction**

Debtor Matthew T. Minarik commenced this case on January 16, 2025, by petitioning for relief under chapter 7 of Title 11, U.S. Code. (ECF No. 1.) When the petition was filed, an automatic stay against collection of pre-petition debts immediately took effect, prohibiting creditors from pursuing collection of pre-petition debts from Mr. Minarik. 11 U.S.C. § 362(a). Mr. Minarik listed a debt owed to PPL Electrical Utilities on his schedules of assets and liabilities. (ECF No. 1.)

On April 1, 2025, Mr. Minarik moved the Court to sanction PPL for violating the automatic stay by attempting to collect a pre-petition debt from him. (ECF No. 16.) He later amended the motion to include additional post-filing violations. (ECF No. 19.) Mr. Minarik seeks an award of actual and punitive damages under 11 U.S.C. § 362(k). *Id*. PPL opposed the motion through written objections. (ECF No. 21, 25.) The Court held an evidentiary hearing on May 13, 2025. (ECF No. 26.) At no point did either party assert a right to a jury.

Mr. Minarik now submits this memorandum under the Court's directive to address the impact of *SEC v. Jarkesy*, 603 U.S. 109 (2024) on his request for punitive damages.

## Question Presented

In *Jarkesy*, the Supreme Court concluded that the Seventh Amendment entitles a defendant to a jury trial when a civil fraud claim brought in an administrative proceeding by the Securities and Exchange Commission (1) closely resembles a common-law cause of action and involves monetary relief that is legal in nature, and (2) falls outside the public rights exception. After *Jarkesy*, may the Court award punitive damages under Section 362(k) without empaneling a jury?

## Brief Answer

Yes, and more than a half-dozen bankruptcy courts have done so.[1]

---

[1] *In re Weathers*, ___ B.R. ___, 2025 WL 1707948 (Bankr. D.S.C. June 3, 2025); *In re Almy*, ___ B.R. ___, 2025 WL 1012850 (Bankr. D. Or. Mar. 31, 2025); *In re Alexander*, 2025 WL 853859, at *2 (Bankr. S.D.N.Y. Mar. 18, 2025); *Dawson v. RAM Motors (In re Dawson)*, 665 B.R. 796, 804 (Bankr. S.D. Ohio 2025; *Payne v. Blue Ridge (In re Payne)*, 666 B.R. 313 (Bankr. D.S.C. 2024); *In re Alcon*, No. 24-10174, 2024 WL 3912257 (Bankr. D.N.M. Aug. 22, 2024); *In re Edgewater Constr. Grp.*, 665 B.R. 645 (Bankr. S.D. Fla. 2024); *see Lysyy v. Deutsche Bank Nat'l Tr. Co.*, 2025 WL 1645203 (W.D. Wash. May 27, 2025) (striking jury demand).

2

**Argument**

PPL is not entitled to a jury trial on Mr. Minarik's demand for punitive damages. Section 362(k) is a statutory cause of action designed to enforce compliance with a core feature of the bankruptcy system, not to mirror common-law remedies. Congress created it to give real force to the automatic stay, which had lacked meaningful enforcement when the Bankruptcy Code was enacted. Because this claim arises from a broader regulatory scheme rather than a common-law replica, no jury is required. And even if a jury right could have been asserted, PPL waived it.

**I.      Section 362(k) claims do not trigger a Seventh Amendment jury right.**

*Jarkesy* broke no new ground for bankruptcy courts. It simply reaffirmed the precedent established by *Granfinanciera v. Nordberg*, 492 U.S. 33 (1989) over thirty years ago and applied it to administrative agencies like the SEC.[2] *Jarkesy*, 603 U.S. at 134 ("*Granfinanciera* effectively decides this case."). The Third Circuit recently declined to consider whether *Jarkesy* has a broader constitutional impact. *Nat'l Lab. Rels. Bd. v. Starbucks Corp.*, 125 F.4th 78, 95 n.5 (3d Cir. 2024).

---

[2] *Jarkesy* is a narrow ruling that applies only to the SEC's practice of using in-house hearings for civil fraud claims. *Jarkesy*, 603 U.S. at 110 ("Held: When the SEC seeks civil penalties against a defendant for securities fraud, the Seventh Amendment entitles the defendant to a jury trial."); *id*. at 141 ("The Court decides a single issue: Whether the Securities and Exchange Commission's use of in-house hearings to seek civil penalties violates the Seventh Amendment right to a jury trial.") (Gorsuch, J., concurring); *id*. at 201 ("The majority claims that its ruling is limited to 'civil penalty suits for fraud' pursuant to [Dodd-Frank].") (Sotomayor, J., dissenting).

*Jarkesy*'s holding is predicated on the SEC's role in such hearings as an all-in-one prosecutor, judge, jury, and executioner. *Id*. at 115–21 (discussing concentration of power, procedural imbalance, and limited judicial oversight); *id*. at 143–44 (discussing how evidence and discovery are limited compared to those in an Article III forum) (Gorsuch, J., concurring). Those characteristics bear no resemblance to this Court, which is a neutral and detached magistrate that follows the same rules of evidence and civil procedure as Article III courts.

Under *Granfinanciera*, the Seventh Amendment right to a jury is triggered when (1) a statutory claim is analogous to an action that would have been brought in a court of law in 18th century England, and (2) the nature of the remedy sought is legal rather than equitable (with this factor being more important than the first), <u>unless</u> (3) "Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder." *Granfinanciera*, 492 U.S. at 42 (citing *Tull v. United States*, 481 U.S. 412, 417–418 (1987)). Practically speaking, the third prong considers whether the public rights exception applies. *Id.* at 51–55. A claim is a matter of public right when it "involve[s] statutory rights that are integral parts of a public regulatory scheme and whose adjudication Congress has assigned to an administrative agency or specialized court of equity." *Id.* at 55 n.10. When the public rights exception applies, no jury right attaches, even if the claim and remedy are legal in nature. *Id.* at 42 n.4. Despite its name, the public rights exception applies when the government is not a party to the action if a claim "flows from a federal statutory scheme . . . ." *Stern v. Marshall*, 564 U.S. 462 (2011).

### A.     Section 362(k) claims are not analogous to any actions at common law.

The automatic stay was born when Congress enacted the Bankruptcy Code in 1978. Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, § 362, 92 Stat. 2549 (1978) (effective Oct. 1, 1979). Unsurprisingly, actions to recover punitive damages for violation of the automatic stay were not brought at law in 18th-century England. *Calderon v. Bank of Am. (In re Calderon)*, 497 B.R. 558, 561 (Bankr. E.D. Ark. 2013). Relief for violation of the stay is "unique to the [Bankruptcy] Code" and "not possible to obtain under state law." *Tow v. Henley (In re Henley)*, 480 B.R. 708, 765 (Bankr. S.D. Tex. 2012). Even so, the conduct giving rise to claims under Section 362(k) "will almost always be coextensive with common law torts." *Wharton v. Prosper Marketplace (In re Wharton)*, Ch. 13 Case No. 23-12910, Adv. No. 24-0078, slip op. at 5 (E.D. Pa. Oct. 29, 2024). But merely being

4

coextensive with common law is not enough to trigger the Seventh Amendment because the claims are only similar on the surface.

Although the facts supporting a common-law tort claim may also support a claim under Section 362(k), it is possible for facts that *do not* support a common-law tort to violate Section 362(k). That distinction matters. To recover damages under Section 362(k), a debtor must show that a creditor knew about the bankruptcy, took intentional action that violated the automatic stay (even if not intending to violate the stay or harm the debtor), and that the action damaged the debtor. *In re Scungio Borst & Assocs.*, 652 B.R. 644, 652 (Bankr. E.D. Pa. 2023). On the other hand, a claim for negligence requires a legal duty, a breach of that duty, actual and proximate causation, and damages. Restatement (Second) of Torts § 281 (A.L.I. 1965). Negligence focuses on what a reasonable and prudent person would do under similar circumstances—Section 362(k) does not. A creditor who acts reasonably may still violate the stay if the conduct is intentional and occurs after notice of the bankruptcy filing. They may also be liable if the harm caused by their actions is not foreseeable—an outcome not generally applicable to negligence claims. Significant differences exist when comparing Section 362(k) to intentional torts as well. For example, intentional infliction of emotional distress requires a showing of extreme and outrageous conduct, while Section 362(k) does not. *Id*. § 46.

In *Jarkesy*, common-law fraud was an "ancestor" of the statute at issue in that case, and Congress "dr[ew] upon common law" in enacting it. *Jarkesy*, 603 U.S. at 120, 125. Section 362(k) has no such lineage to common law, nor do they share terms of art or legal principles. *Calderon*, 497 B.R. at 561 (citing *In re Valley Steel Prods.*, 147 B.R. 189, 192 (Bankr. E.D. Mo. 1992) (discussing Section 362(k)'s lack of historical analogue); *see generally Jarkesy*, 603 U.S. at 136–137 (discussing

5

characteristics of novel statutory actions). Common-law torts are, at most, the unrelated friend of the family whom Section 362(k) calls aunts or uncles. They may know each other well, but they do not share DNA.

Because Section 362(k) is a novel cause of action closely related to the automatic stay, there is simply no equivalent at common law. If anything, Section 362(k) claims are more closely analogous to actions enforcing a court order, which did not require a jury in 18th-century England. *Lysyy*, 2025 WL 1645203, at *2 (citing *Windsream Holdings v. Charter Communications (In re Windstream Holdings)*, 2020 WL 1304147, at *5 (Bankr. S.D.N.Y. Mar. 17, 2020).

### B. Section 362(k) remedies are not legal in nature.

Section 362(k) remedies differ sharply from the civil penalties at issue in *Jarkesy*, both in purpose and structure.

> A penalty [is legal in nature] when it has the following characteristics: (1) the penalty amount is not tied to profits from the alleged violations or to restitution; (2) the relevant statutory factors seek to deter unwanted behavior, potentially by increasing the penalty based on culpability; (3) the collected penalty need not be returned to the actual victims of the violation; and (4) no consumer harm needs to be shown to prevail.

*Texas v. Google*, ___ F. Supp. 3d ___, 2025 WL 1713256, at *8 (E.D. Tex. June 18, 2025) (citing *Jarkesy*, 603 U.S. at 124–25). Punitive damages under Section 362(k) require a predicate finding of actual damages, meaning they are tethered to compensatory harm—not imposed independently or in the abstract. While the statute serves a deterrent purpose, it does not establish a tiered penalty structure based on culpability. Under Section 362(k), punitive damages are awarded directly to the injured debtor, not to the government. In sum, Section 362(k) remedies allow enforcement of the Bankruptcy Code through actions that compensate debtors who have

6

been harmed. They are not government-imposed penalties unrelated to actual harm, like the remedies at issue in *Jarkesy*. As a result, Section 362(k) remedies are equitable, not legal in nature.

**C. Even if Section 362(k) claims and remedies are legal in nature, the public rights exception applies.**

Even assuming Section 362(k) claims and remedies are legal in nature, the right to a jury still does not attach because the claim falls within the public rights exception. Congress created Section 362(k) to address a structural enforcement gap in the Bankruptcy Code, not to copy and paste a common law claim into a statute. It was a new right designed to enforce a protective mechanism unique to the Bankruptcy Code. And because the automatic stay is inseparable from the Bankruptcy Code, Congress acted well within its authority in assigning enforcement of Section 362(k) to non-Article III courts. These claims arise from, and operate within, the specialized framework of the Bankruptcy Code.

*1. Congress enacted Section 362(k) to solve a structural enforcement failure.*

Section 362(k) exists only to enforce compliance with the Bankruptcy Code's automatic stay. When the automatic stay became law in 1979, it lacked a statutory enforcement process, making it a bark with no bite. The Court's contempt authority was the only means to enforce the stay, and it fell short of coercing meaningful compliance.[3] *See* J.S. Feldman, *Contempt and the Automatic Stay of the 1978 Bankruptcy Code: Are They Compatible?*, 6 CARDOZO L. REV. 177 (1984); Jeffrey A. Stoops, *Monetary Awards to the Debtor for Violations of the Automatic Stay*, 11 FLA. ST. U. L. REV. 423, 435–439 (1983). At the time, creditors who knowingly violated the stay could escape

---

[3] If common-law torts were analogous to Section 362(k) claims, common-law actions would have been used to enforce the automatic stay between 1979 and 1984—but they were not.

7

sanctions if they lacked malice and subjectively believed that they were acting lawfully. *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1104 (2d Cir. 1990).

To fix the problem, Congress enacted Section 362(k) in 1984 as "an additional right of individual debtors . . . not intended to foreclose recovery under already existing remedies." Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333; 130 CONG. REC. H1942 (daily ed. Mar. 26, 1984) (remarks by Rep. Peter Rodino). Section 362(k) established a uniform standard of enforcement and recovery that enables debtors to affirmatively seek redress and compensation for willful violations. In doing so, Congress gave the automatic stay the enforcement power it lacked at inception by imposing a lower standard of recovery than was available before. That enforcement power is essential to the entire bankruptcy system because the automatic stay is the primary benefit of filing for bankruptcy.

The *Granfinanciera* Court held that jury rights attached to claims under the Bankruptcy Code's fraudulent transfer statute because, in enacting that statute, Congress did not "creat[e] a new cause of action, and remedies therefor, unknown to the common-law, because traditional rights and remedies were inadequate to cope with a manifest public problem." *Granfinanciera*, 492 U.S. at 60 (quoting *Atlas Roofing v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 461 (1977)) (internal quotation marks omitted). As the legislative history shows, that is exactly what Congress *did do* when it enacted Section 362(k). It created a new cause of action, unknown to the common law, because nothing else that existed at the time could solve a serious public problem—underenforcement of the automatic stay. In doing so, Congress did not "simply reclassif[y] a pre-existing, common-law cause of action that was not integrally related to the reformation of debtor-creditor relations and that apparently did not suffer from any grave deficiencies," as it did with the

fraudulent transfer statute. *Granfinanciera*, 492 U.S. at 60–61 (explaining the characteristics of statutes copied from the common law).

Because Section 362(k) did not exist before 1984, has no analogue in common law, and cannot be brought in state court, it is exactly the kind of novel statute the public rights exception contemplates.

> 2. *Section 362(k) enforces rights inseparable from the bankruptcy system.*

When the government is not a party, a claim involves a public right when it is "closely intertwined with the bankruptcy regime" and "inseparable from the bankruptcy process." *Jarkesy*, 603 U.S. at 192–93 (citing *Granfinanciera*, 492 U.S. at 54, 56). The issue at hand must "stem[] from the bankruptcy itself. . . ." *Stern*, 564 U.S. at 499. All these characteristics describe the automatic stay, which is "fundamental to the bankruptcy system enacted by Congress." *Johnson*, 548 B.R. at 775 (quoting *Loveridge v. Hall (In re Renewable Energy Dev. Corp.)*, 500 B.R. 77, 93 (D. Utah 2013), *remanded on other grounds*, 792 F.3d 1274 (10th Cir. 2015)). Congress properly assigned Section 362(k) claims to bankruptcy courts because stay violations involve fact-bound disputes inseparable from the bankruptcy process itself. *See Stern*, 564 U.S. at 494 (citing *Crowell v. Benson*, 285 U.S. 22, 46 (1932)) (Congress may assign matters involving public rights to adjudicators with expertise relevant to the questions of fact at hand).

The automatic stay is the heart of the Bankruptcy Code and its foundational protection. A creditor's violation of the stay, and a debtor's effort to remedy that violation, arises only because a bankruptcy case exists. These claims cannot be separated from the bankruptcy process because they would not exist without it. Moreover, enforcing the stay serves the core objectives of bankruptcy: providing orderly debt administration, treating creditors fairly, and offering debtors meaningful relief. A system in which stay violations must be litigated in separate forums or before

9

a jury in every instance would frustrate those goals. It would impair the uniformity Congress intended when it enacted Section 362(k), and which the Constitution allows under the public rights doctrine.

Because Section 362(k) is functionally inseparable from the automatic stay, and because the stay is inseparable from the bankruptcy system, claims under the statute fall squarely within the public rights exception and may be properly adjudicated by the Court without a jury.

**II.     Even if Section 362(k) claims do trigger a Seventh Amendment jury right, no jury right exists here because it was waived.**

The Court may exercise the same power as an Article III court in core proceedings "when[ever] the parties knowingly and voluntarily consent to adjudication by a bankruptcy judge." *Wellness Int'l Network v. Sharif*, 575 U.S. 665, 669 (2015). This is a core proceeding because it arises under Section 362(k). *In re Healthcare Real Est. Partners*, 941 F.3d 64, 70 (3d Cir. 2019). PPL voluntarily consented to adjudication by the Court when it responded to the sanctions motion by requesting that the Court grant relief in its favor, without objecting to the Court's jurisdiction. *In re Trib. Media*, 902 F.3d 384, 394 (3d Cir. 2018); *see generally* Local Bankr. R. 9014-3(j) ("A response or objection shall contain a statement that the party filing the response or objection does or does not consent to the entry of final orders or judgments by the court . . . .").

As explained above, PPL does not have a right to a jury here. But even if a jury right existed, PPL waived it by failing to demand a jury trial within fourteen days after responding to Mr. Minarik's amended motion. Fed. R. Civ. P. 38(b) (incorporated by Local Bankr. R. 9015-1); *In re 222 Liberty Assocs.*, 99 B.R. 639, 643 (Bankr. E.D. Pa. 1989) (time to request a jury under Rule 38(b) runs from the responsive pleading deadline). Because PPL consented to the Court's authority to

10

enter a final order on this core matter, and because it did not demand a jury in the time allowed, the Court may award punitive damages under Section 362(k) without empaneling a jury.

## Conclusion

At the evidentiary hearing, a PPL witness testified that a misconfigured computer system caused the stay violation here and had been faulty since 2023. Given PPL's large customer base, its misconfigured system likely caused systemic stay violations in dozens of other cases over the past two years. If it had not been for this litigation, the misconfiguration would probably have continued for another two years, resulting in even more stay violations. The regulatory-like function of this Section 362(k) claim is a real-world demonstration of the statute's constitutional basis as a public right—and its importance. Any other conclusion would discourage litigation like this and send a clear message to creditors that compliance with the automatic stay is voluntary.

As explained above, the Seventh Amendment does not trigger a jury right for Section 362(k) claims because the statute lacks a meaningful common-law analogue and serves primarily equitable and regulatory purposes. Even if characterized as legal claims, they fall within the public rights exception because they exist solely to enforce a federal scheme that is inseparable from the bankruptcy process. For all these reasons, the Seventh Amendment does not require a jury here. In any event, the Court may award punitive damages because even if a jury right existed, it was waived.

Date: June 30, 2025	**SADEK LAW OFFICES, LLC**

By: /s/ Michael I. Assad
 Michael I. Assad
 1500 JFK Boulevard, Suite 220
 Philadelphia, PA 19102
 215-545-0008
 michael@sadeklaw.com

*Attorney for Debtor*

### Certificate of Service

I certify that on this date, I did cause a copy of this document to be electronically served on all parties on the Clerk's service list that are registered to receive notices through the CM/ECF system.

Date: June 30, 2025	/s/ Michael I. Assad
	Michael I. Assad